MARCOS CALDERÓN DE LA CONCHA; JUANA RITA CALDERÓN RIVERA; CARMELO, JOSÉ ANTONIO y EMILIA CALDERÓN REYES; RITA y MARÍA CONCEPCIÓN GONZÁLEZ CALDERÓN; ENRIQUE, MARÍA ISABEL y MARÍA TERESA GONZÁLEZ JIMÉNEZ, demandantes y apelantes, *v.* LAS SUCESIONES desconocidas de JAVIER ZEQUEIRA BENÍTEZ, y otras; MATILDE VEGA JIMÉNEZ VDA. DE SANJURJO; ANGELA y MARÍA ASUNCIÓN CORALI SANJURJO VEGA y LA SOCIEDAD ESPAÑOLA DE AUXILIO MUTUO Y BENEFICENCIA, demandadas y apeladas.

No. 4850.—*Sometido:* Marzo 6, 1930. *Resuelto:* Junio 10, 1931.

*R. Sancho Bonet*, abogado de los apelantes; *Monserrat & Monserrat*, abogados de la apelada Sociedad Española de Auxilio Mutuo y Beneficencia.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La corte de distrito declaró que la parte demandada en una acción reivindicatoria había adquirido el título a la finca en litigio por prescripción, y se señala esto como error.

En 1874 doña Rita de la Concha, esposa de don Félix Calderón, compró los terrenos ahora en controversia. Tu-

vieron cuatro hijos, Marcos, Pedro, José Antonio e Isabel María. Pedro falleció en abril de 1876, dejando una hija menor de edad, Juana Rita. Alrededor de un mes después, doña Rita y su esposo fallecieron ab intestato, dejando como herederos a sus tres hijos Marcos, José Antonio e Isabel María Calderón de la Concha, y a la nieta, Juana Rita Calderón Rivera. Isabel María era la esposa de Rodolfo González.

En 1888, Javier Zequeira Benítez, alegando que había adquirido la propiedad de Rodolfo González en 1881, obtuvo un título posesorio que inscribió en el registro de la propiedad en 1889. En marzo de 1890, Zequeira vendió a José Martínez Pérez, quien reconoció la existencia de una hipoteca a favor de la menor Juana Rita Calderón Rivera. En abril de 1890, Martínez Pérez otorgó hipoteca a favor de Miguel Portero para garantizar un préstamo de $1,000.

En un instrumento notarial fechado abril 1, 1890, Marcos Calderón de la Concha, que a la sazón tenía 29 años de edad, consignó que en un documento privado suscrito en 1876, él, menor de edad para aquel entonces, y su hermano José Antonio, y su hermana Isabel Calderón, voluntariamente habían reconocido a Rodolfo González como dueño de la propiedad adquirida por Rita de la Concha en 1874, habían admitido la compra por González de esa propiedad en vida de doña Rita, habían explicado la falta de otorgamiento de la escritura de traspaso como debida a la muerte repentina de doña Rita, seguida inmediatamente por la de su esposo, y habían asentido en la posesión quieta, pacífica y no interrumpida de González y en el pago de las contribuciones por él como dueño desde el tiempo de tal compra. En el mismo documento Marcos Calderón renunció a cualesquier derechos que pudieran emanar del hecho de que era un menor al tiempo de otorgarse el documento privado de 1876, ratificó ese escrito, y reconoció la validez del traspaso hecho por Rodolfo González a Javier Zequeira Benítez y del por Zequeira Benítez a José Martínez Pérez.

En octubre de 1891, Martínez Pérez le vendió a José Fernández Villamil, con sujeción al pacto de que si dentro del término de un año se restituía el precio al comprador, éste retrovendería la finca. Esa escritura fué inscrita dentro del mismo mes y año, y la consumación de la venta se hizo objeto de una nota marginal a instancia de un dueño posterior en febrero de 1900.

En diciembre de 1898, Juana Rita Calderón, entonces de veinte y tres años, recibió, en presencia de notario, de la viuda de José Fernández Villamil la cantidad de la hipoteca aludida en la enajenación hecha por Zequeira a favor de Martínez Pérez, y consintió en que se cancelara la hipoteca, que lo fué en el registro de la propiedad.

Posteriormente, después de una serie de traspasos, la finca fué comprada por Matilde Vega en marzo de 1902. Unos dos años antes, el título posesorio se había convertido, por decreto judicial, en uno de dominio. En enero y febrero de 1907, la Sociedad Española de Auxilio Mutuo y Beneficencia, aquí demandada, adquirió de doña Matilde y de sus hijos, herederos del difunto esposo de aquélla.

La presente acción fué comenzada en diciembre de 1925, más de diez y ocho años después de la adquisición de la finca por la demandada, y más de treinta y cinco años de efectuada la enajenación por Zequeira a favor de Martínez Pérez. La demandada ya había adquirido el título a la finca, tanto a virtud de posesión por más de diez años de buena fe y so color de título, como por posesión durante más de treinta años, con o sin buena fe o justo título, a menos que el transcurso de este período estatutorio hubiese sido interrumpido por un pleito entablado en 1906 por Juana Rita Calderón y Rivera. Parece que el expediente de esa acción se ha perdido, y no fué presentado en evidencia en el curso del juicio de este caso.

El secretario de la corte de distrito libró una certificación acerca de la existencia de cierto asiento en un registro

de su secretaría en el sentido de que en marzo de 1906 se radicó por Miguel Guerra, abogado de la parte actora, la demanda en la acción reivindicatoria titulada *Sucesión de Pedro Luis Calderón de la Concha,* demandante, v. *Los Herederos de José J. Sanjurjo,* demandados; que Manuel F. Rossy era el abogado de la parte demandada; que en marzo 29, se archivaron siete emplazamientos diligenciados; que los demandados excepcionaron el 9 de abril; que en agosto 1°. se radicó moción pidiendo señalamiento de la excepción previa; que en septiembre 21 la corte la resolvió; que en febrero 25, 1907, la corte nuevamente consideró una excepción previa; y que en marzo 20, 1908, el caso fué desestimado por abandono. Una copia certificada de la sentencia expresa que el 8 de abril, 1907, el letrado de la parte demandada solicitó en corte abierta que se tuviera a la demandante por desistida de su acción; y que los abogados de ambas partes anunciaron que estaban listos para discutir la moción, que fué argumentada el mismo día. Esa sentencia dice haber sido dictada en marzo 31, 1907, y haber sido registrada en el libro de sentencias el 1°. de junio. Se refiere a una opinión que se dice haber sido archivada por el juez de distrito como expresiva de las razones por las cuales se desestimó el caso por abandono.

De la declaración del secretario de la corte de distrito, prestada durante el juicio del caso de autos, con el registro de casos civiles en sus manos, tomamos el siguiente extracto:

"P. ¿Cuál es el segundo asiento que le sigue? R. Dice así: 'Marzo 28, 1906, taquígrafo, tres dólares.'—P. ¿Cuándo se devolvieron los mandamientos diligenciados según dice ahí? R. Después hay un asiento que dice: 'Marzo 29, 1906, emplazamientos tres cincuenta.' —P. ¿Es decir que aparecen los mandamientos devueltos. . . . . R. No puedo decir si son devueltos o no, dice: 'Marzo 28, 1906, 7 mandamientos.' Juez: ¿Son devueltos, o expedidos? R. No puedo decirle cuál era la costumbre en esa época. Juez: En las leyes de 1904, el Código de Enjuiciamiento Civil, había una ley de arancel, y ahí

consta todo eso, lo que se cobraba por radicar la demanda. Se hacía un depósito de diez dólares por conveniencia de los secretarios, y de ahí se iba gastando y luego se liquidaba.''

Félix Vega Nevares, quien actuó como apoderado de su hija Matilde Vega en la enajenación de la finca a la aquí demandada, declaró como testigo de los demandantes en el presente caso: que un comité representando la Sociedad Española de Auxilio Mutuo y Beneficencia, el presidente don Avelino Vicente, el abogado Wenceslao Bosch, y otras personas, lo visitaron un día de enero de 1907 y le preguntaron si el testigo estaba dispuesto a vender la finca; que el testigo les manifestó que tenía poder de su hija, y le pidieron el precio, fijándolo él en $5,500, pero advirtiéndoles que unos dos meses antes, Juana Rita Calderón había instado pleito en la corte de distrito contra la hija del dicente; que el abogado Wenceslao Bosch repuso que la acción pendiente no era un obstáculo, porque en su opinión estaba prescrita por el transcurso de los años, pero que podrían depositarse $1,100 en corte para atender a las resultancias del pleito; y que la Sociedad Española de Auxilio Mutuo efectuó el depósito.

Los artículos 1851, 437, 1846 y 1847 del Código Civil leen como sigue:

''Artículo 1851. La buena fe del poseedor consiste en la creencia de que la persona de quien recibió la cosa era dueño de ella, y podía transmitir su dominio.''

''Artículo 437. La buena fe se presume siempre, y al que afirma la mala fe de un poseedor corresponde la prueba.''

''Artículo 1846. La interrupción civil se produce por la citación judicial hecha al poseedor, aunque sea por mandato de tribunal o juez incompetente.

''Artículo 1847. Se considerará no hecha y dejará de producir interrupción la citación judicial:

''1. Si fuere nula por falta de solemnidades legales.

''2. Si el actor desistiere de la demanda o dejare caducar la instancia.

''3. Si el poseedor fuere absuelto de la demanda.''

Según demuestran los incisos segundo y tercero del artículo 1847, la interrupción civil a que se refiere el 1846 depende de que el demandante prosiga su pleito hasta una terminación victoriosa. 12 Manresa 802, 804. Una acción sin éxito, que no resulte en cambio alguno de posesión, no interrumpe el transcurso del período estatutorio. El resultado es el mismo, ya desista voluntariamente el demandante, o se le desestime su acción por abandono. 2 C. J. 109, sec. 166.

■ La tentativa infructuosa de Juana Rita Calderón de recobrar una participación pro indivisa de la propiedad no interrumpió la posesión adversa de la demandada ni la de su causante, Matilde Vega. La posesión de la demandada y de aquéllos de quienes arranca su título, comenzando con la inscripción de un título posesorio de Javier Zequeira Benítez y extendiéndose a través de un término de treinta y siete años, se había convertido en pleno dominio antes de iniciarse el presente litigio.

■ El efecto de una acción anterior sobre la buena fe de la demandada, es cuestión distinta, pero en este caso también convenimos con la corte inferior en que la prueba de los demandantes no fué suficiente para controvertir la presunción de buena fe.

Puede admitirse que la demandada fué colocada en una situación inquisitiva al enterarse del pleito pendiente cuando iba a comprar la propiedad. No podemos asumir que sus pesquisas hubieran revelado algo más de lo que los demandantes lograron probar en el juicio del presente caso.

■ La venta de Javier Zequeira Benítez a Martínez Pérez fué un "justo título" dentro del significado del artículo 1858 del Código Civil. *Teillard* v. *Teillard et al.,* 18 D.P.R. 562. Cuando Juana Rita Calderón entabló su pleito diez y seis años después de la fecha de esa venta, Matilde Vega y sus causantes ya habían adquirido el título por prescripción. Durante todo ese tiempo, nada había en el registro

de la propiedad que acusara defecto alguno en el título, el que en 1900 se había convertido en uno de dominio. La buena fe de los adquirentes sucesivos a través de ese período a duras penas puede ponerse en duda.

■■ Cuando la demandada compró la propiedad, tenía todos los motivos para creer que Matilde Vega era dueña de la misma, y que tenía una buena defensa en el pleito iniciado por Juana Rita Calderón. El hecho de que retuviera parte del precio de la venta y la depositara ínterin se determinase definitivamente ese pleito, no monta a evidencia de mala fe. El título por prescripción, cuando se propugna como defensa, debe ser alegado y establecido. El depósito era meramente un estímulo para la propia presentación de una buena defensa y una precaución ordinaria contra el posible fracaso en establecerla, a falta de tal incentivo, después del traspaso de la finca. La misma demandada, pues, era un poseedor de buena fe y con justo título desde la fecha en que compró, y había perfeccionado ese título por prescripción mucho antes de iniciarse el presente litigio.

En vista de las conclusiones a que ya hemos llegado, no necesitamos considerar otros extremos discutidos en el alegato de los apelantes, ni queremos que se entienda estamos considerando cuestiones no suscitadas por esa parte.

*Debe confirmarse la sentencia apelada.*